**LEHIGH VALLEY R. CO. v. PEASLEE**

No. 1810.

District Court, E. D. Pennsylvania.

Oct. 8, 1942.

Harry E. Sprogell, of Philadelphia, Pa., Edwin H. Burgess, of New York City, and Maurice Bower Saul, of Philadelphia, Pa., (Saul, Ewing, Remick & Harrison, of Philadelphia, Pa., of counsel), for plaintiff.

Thomas Raeburn White, of Philadelphia, Pa. (White & Staples, of Philadelphia, Pa., of counsel), for defendant.

KALODNER, District Judge.

Apart from motions and affidavits in support thereof, the pleadings thus far consist of the following:

(1) Plaintiff's complaint and supplemental complaint;

(2) Defendant's answer and cross claim;

(3) Defendant's supplemental answer.

The complaint alleges the following situation:

During the first World War, in 1916, an explosion occurred in New York Harbor, resulting in damage to the plaintiff's property. The incident subsequently became known as the "Black Tom Explosion" and was then ascribed to sabotage on the part of agents of the German Government.

Thereafter, under treaty statutes, a Mixed Claims Commission was established. One of its duties was to determine the amount which Germany should pay to American nationals who had suffered loss through the acts of the German Government or its agents during the period of the first World War.

In April, 1924, plaintiff employed defendant, an attorney, under written contracts covering the amount of contingent fees and other details, to represent it in prosecuting its claim before the Commission. The defendant discharged his duties and ultimately recovered an award in the amount of some $10,000,000.00 for the plaintiff. The actual award was greater, but the fund available to pay war claims was not sufficient to cover them all.

The Settlement of War Claims Act of 1928, 45 Stat. 254, provided that upon the request of American claimants, the American Commissioner (the Mixed Claims Commission consisted of an American Commissioner, a German Commissioner and an umpire selected by both) should fix the fees to be paid by such claimants for "services in connection with the proceedings before the * * * Mixed Claims Commission" and the collection of the award, irrespective of the provisions of contracts which might have been made for such services.

Prior to actual payment of any award, the plaintiff requested the American Commissioner to fix the fee of its attorney, the defendant herein; the American Commissioner thereupon took testimony and fixed the fee. His order reads:

"The American Commissioner decides and fixes as the total reasonable fee to be paid by the claimant Lehigh Valley Railroad Company to its attorney Amos J. Peaslee for himself and those others who, at his instance as attorney for the claimant, have rendered services to, or made or incurred disbursements, expenses and liabilities for the benefit of, the claimant, Lehigh Valley Railroad Company, with respect to the prosecution of its Black Tom claim from the spring of 1924 to the date hereof, the fee fixed by the contract between the claimant and its attorney, to-wit, a sum equal to 50 per cent of all amounts received and to be received by· the claimant Lehigh Valley Railroad Company in payment of the award, less the sum of $108,621.08 advanced by it in respect of the disbursements of its attorney for costs and expenses; the said sum to be received as full compensation for all such services, disbursements, expenses and liabilities aforesaid rendered, made or incurred by Amos J. Peaslee and the said others in the prosecution and collection of the claim and award, as defined by Section 9 of the Settlement of War Claims Act of 1928, including necessary expenses and disbursements incurred in the presentation of the claim before the Commission and in securing the payments on account of the award entered October 30, 1939."

The plaintiff's agreement to pay defendant's fee is constituted by three writings, being Exhibits "A", "B" and "C" respectively, attached to the complaint. The writings are dated June 17, 1924, March 1, 1932, and March 9, 1933, respectively.

In the first writing, the plaintiff agreed, *inter alia,* to pay defendant for his services *25 per cent of the first $1,000,000.-00* recovered from the German Government, *plus 20 per cent of any additional recovery.* It also agreed to make certain disbursements for necessary expenses.

Under the second writing, the arrangement was somewhat altered. The contingent fee was *increased to 35 per cent*

of all amounts (less advances for expenses made by the plaintiff) recovered from the German Government; but the plaintiff refused any longer to make further advances for necessary expenditures.

The third agreement, apparently in recognition of the fact that still further substantial expenditures would have to be incurred, *enhanced the contingent fee to 50 per cent*. The relevant portion of the final writing reads as follows:

"The Lehigh Valley is not prepared to contribute any new cash to the further prosecution of this case, but is willing to turn over an additional 15% of our claim to help finance the task still before you. This will make a total of 50% of the claim which will be due to you or others as you have or may advise us."

The defendant had, from time to time, obtained agreements whereby third parties advanced monies for necessary expenditures (the litigation and preparation therefor extended over a period of years and involved considerable work in obtaining evidence, presenting it, and in appearing in various courts). He also secured the services of other attorneys to assist him in the work and made agreements to pay certain monies to such third parties, either out of his contingent fee or out of any monies which he would receive from Lehigh under his agreement with the plaintiff, or out of monies to be received by the plaintiff by way of an award from the Mixed Claims Commission. One or more of the agreements which the defendant made to pay monies to such third party or parties was made by him as an agent for the plaintiff, with the effect that the plaintiff was liable for the payment or payments if the defendant failed to perform.

When the time came for the payment of the award by the Mixed Claims Commission, an arrangement had been made, with the knowledge and consent of the parties involved, that the checks were to be made payable to the plaintiff as payee, but were to be physically delivered to the defendant as plaintiff's attorney. Still prior to the receipt of the checks, the defendant communicated with the plaintiff and insisted that it consent to an arrangement whereby the plaintiff would, simultaneously with the defendant's delivery to plaintiff of the checks for the award, deliver to the defendant its own check or checks for half the amount of the award received by the plaintiff. For various reasons not particularly germane to the discussion here, the plaintiff assented to this demand.

The arrangement was carried out. The award checks were made payable to the plaintiff and were mailed to the defendant. He delivered them to the plaintiff, at the same time receiving its checks for half the amount thereof.

The plaintiff takes the position in its complaint that under its fee agreement with the defendant, he was under no circumstances to receive more than 25 per cent of the amount of any award for his own use; that the American Commissioner, in holding that the defendant was entitled to receive 50 per cent (for himself and for others to whom he had made commitments or allocations) exceeded the limits of his jurisdiction as conferred upon him by applicable statutes; that the defendant, in making some of his commitments, had imposed a liability upon the plaintiff which it and it alone was entitled to discharge by payment, and that it is entitled to receive from defendant monies wherewith to make such payments; wherefore the plaintiff prays for an accounting from the defendant of all the sums received by him from the plaintiff; a decree directing the defendant to disclose all fees, commitments and assignments of or against any portion of the funds recovered on the Black Tom claim and of or against future recoveries, together with their provisions and the circumstances under which they were created, etc. It also prays the court to find what assignments, commitments or claims created by the defendant are properly chargeable against the defendant's own fees, and what are chargeable against "amounts of Lehigh's Black Tom claim made available to Peaslee for meeting expenses of prosecuting" the claim; and for a decree directing the defendant to return to the plaintiff any portion of the funds which came into his hands and which he is not entitled to retain as his personal fees for services.

It may be stated parenthetically that the complaint also avers that a number of third persons have advised the plaintiff of the commitments, allocations, assignments or claims created by the defendant to them.

The defendant's answer asserted generally that the purport of the agreements between him and the plaintiff, and the effect of the American Commissioner's decision hereinabove quoted, was that he, the defendant, should receive 50 per cent of the

58

award, and should himself pay thereout whatever sums are necessary to satisfy the various claims, commitments, allocations or assignments which he had created to the third persons above described (either attorneys, or those who advanced monies for expenditures); that it is his duty and his alone to make such payments; that no persons to whom any payments may be due (whether the defendant alone or the plaintiff alone or both are liable therefor) have appeared in this court to make claim; that he has disposed of all but 5 per cent of the monies received by him out of the award, and has left in his bank account wherein the monies were deposited a sum larger than is necessary to pay any claimants not yet satisfied. The defendant also attaches to his answer a statement which purports to be an accounting of all the monies received by him from the plaintiff (i.e., half the award recovered by the plaintiff), which accounting reveals payments made to various persons with descriptions of the agreements under which the payments became due or payable.

The defendant contends in his motion for summary judgment that the complaint constitutes a collateral attack upon the jurisdiction or decision of the American Claims Commissioner. He argues that that jurisdiction is fixed by statute and that no review thereof or appeal therefrom is provided by any Congressional legislation; that it is beyond the power of this court to entertain such a collateral attack or to review or modify the decision of the American Claims Commissioner; that he has already rendered, in an exhibit attached to his answer, the accounting sought by the plaintiff; that in any event the action and decision of the American Claims Commissioner in fixing defendant's fees was proper, valid and not in excess of his jurisdiction, nor was it capricious or unreasonable, nor does the complaint aver that it was capricious or unreasonable; that as shown by his answer and accounting he properly notified the plaintiff of all commitments, assignments or claims which he created out of any funds in connection with the award; that he has paid most of them; that he is proceeding as rapidly as possible with the payment of the balance; and that he has retained intact in his special bank account more than enough funds to meet the demands of those claimants who have not yet been paid.

■ Nevertheless, the motion for summary judgment upon the pleadings cannot be granted, whether or not some of the complaint constitutes a collateral attack upon the jurisdiction, action or decision of the American Claims Commissioner in fixing fees. The collateral-attack issue is not one which goes to the entire motion for summary judgment, and therefore need not be considered here; for if the complaint or any part thereof sets forth a cause of action upon which any of the prayers in the complaint can be granted, the complaint may not be dismissed.

■ That part of the complaint upon which is based a prayer for an accounting is proper, and does not of itself comprise a collateral attack upon the jurisdiction of the American Claims Commissioner. For whether that decision or action was proper or not: whether or not a collateral attack thereupon or a review thereof or an appeal therefrom is permissible: nevertheless the plaintiff is entitled to ask for an accounting, and to have a trial once an accounting is rendered, if it questions the accuracy of any of the items furnished in the account, or if it adopts the theory that it is entitled to proof of the verity of the account.

■ It is not disputed by the defendant that, regardless of the aggregate amount of any claims, commitments, or allocations he may have created against the award or his part of the fee, the plaintiff notwithstanding should be entitled to retain not less than 50 per cent of the award for itself. Probable or not, it is still possible that the defendant may have created claims against the plaintiff for which the plaintiff may be liable if the defendant does not pay those claims. The defendant concedes that he did create certain claims. Had he permitted the plaintiff to retain the entire amount of the award until a reasonable time elapsed, during which such claims of third persons might be presented to the plaintiff, the latter could have paid them and then remitted any proper balance of the 50 per cent to the defendant.

The defendant's averment that he has paid all the claimants who notified the plaintiff of their claims, or of whose claims the defendant himself notified the plaintiff, is not dispositive of the situation existing here. The plaintiff is not bound by the averments in defendant's answer and affidavits, and is entitled to demand proof thereof. The plaintiff may upon the trial of this cause adduce testimony from the claimants as to whether or not their claims

have been satisfied. It is also entitled to question the authenticity of copies of affidavits or releases attached to the defendant's answer.

Matters such as these cannot be decided upon pleadings alone. The defendant's answer does not stand for proof. The nature and content of the answer may be sufficient to prevent a summary judgment or decree against the defendant, but the plaintiff is entitled to have proof of the matters set forth in such answer.

Since it is clear that the complaint is valid, at least to the extent herein discussed, the defendant's motion for summary judgment cannot be granted, and it should be and is hereby dismissed.

As to plaintiff's motion for summary judgment in the sum of $421,963.51:

The motion sets forth that the defendant has a balance of $657,790.15 in his possession, after having appropriated fees to himself and paid commitments; that the defendant is entitled to a "personal fee" of only 25 per cent of the first $1,000,000.-00 recovered and 20 per cent of the balance; that if he takes some $235,000.00 out of the above mentioned $657,790.15, there will be sufficient to complete payments or appropriations to himself of his said 25–20 per cent "personal fee"; wherefor the difference of some $422,000.00 should immediately be awarded to plaintiff by summary judgment.

The plaintiff maintains that both under the construction of the fee contracts between itself and the defendant, and by the opinion and findings of the American Commissioner who fixed the defendant's fee, the defendant is entitled to receive as his "personal fee" not more than 25–20 per cent of the amount recovered for the plaintiff; that any sum he retains in his hands in excess of that amount (after giving him credit for payments shown in his accounting, which, for the purposes of this summary motion, are not questioned), is to be paid to those to whom the defendant made commitments; but that plaintiff can pay these commitments as well as the defendant; and, in any event, the defendant has no interest, title in, or right to possession of, such excess monies; that these are monies being held by an attorney (the defendant) for his client (the plaintiff), and therefore the defendant has no right to keep them, but must remit them to the plaintiff, who will make proper disposition of the said monies—whether by keeping

them or paying them out on commitments does not matter.

The fallacy in the plaintiff's position—disregarding for the moment the proper construction of the fee contracts—is in its reading or construction of Commissioner Garnett's findings and opinion.

As I read the said findings and opinion, the Commissioner awarded to the defendant 50 per cent of the recovered Black Tom awards as his fee. It is true that in the course of his findings the American Commissioner fixed the amount at 50 per cent, as a fee "* * * to be paid by the claimant Lehigh Valley Railroad Company to its attorney Amos J. Peaslee for himself and those others who * * * have rendered services * * * or made or incurred disbursements * * *."

This language does not derogate from the 50 per cent awarded to the defendant as his fee.

It seems to me that the Commissioner's intent in using this wording, and any other wording upon which the plaintiff may rely, was to make certain that any commitments the defendant may have made were to be paid out of *his* 50 per cent, and not out of the *plaintiff's* 50 per cent. The Commissioner in various ways made clear the intent of his findings and opinion, that no matter what commitments or allocations the defendant may have made to others; no matter how much those commitments or allocations left available for the defendant's own use; nevertheless, the plaintiff was to retain for itself not less than 50 per cent of the award. The qualifying words in which the defendant's fee was fixed for himself "* * * and others * * *" were not meant to detract from the fee or monies which the plaintiff was to pay the defendant for services rendered. They were inserted as a protection to the plaintiff, so that its 50 per cent should not be diminished by any action of the defendant.

It was partly upon considerations deduced from, and based upon, such findings and language of the American Commissioner, that I refused summary judgment to the defendant upon his motion: holding that his client, the plaintiff, has a right to an accounting, and to proof of the truth and accuracy of any accounting rendered by the defendant.

Note the language of the American Commissioner at pp. 68–69 of his final opinion,

attached as Exhibit "K" to the complaint: " * * * and, independent of said undertaking, the American Commissioner, exercising his judgment, and in accordance with the authority granted him by Sec. 9 of the 'Settlement of War Claims Act of 1928' fixes fifty per cent (50%) of the recovery as a reasonable fee, as defined by said Act, for services and disbursements in connection with the proceedings in this case before the Mixed Claims Commission and with the preparation therefor, and the application for payment and payment."

It would be difficult to formulate with greater clarity a finding or holding that the 50 per cent awarded to the defendant was for his fee. Note again the words of the American Commissioner at p. 64, supra: " * * * It can hardly be doubted that the total fee of 50 per cent of the Lehigh recoveries would have been fair and reasonable had the Black Tom case been won and Lehigh collected on its award in 1935 or 1936. Certainly this was the opinion held by Lehigh when it made its March 9, 1933 agreement with Mr. Peaslee (with which agreement Lehigh was perfectly satisfied in December, 1936)."

Throughout his final opinion, in various ways and phraseology, the Commissioner makes it patent that he is awarding a 50 per cent fee to be paid by the plaintiff to the defendant. That the Commissioner was aware that the defendant had contracted to pay part of his fee to others does not affect the quantum of the award against the plaintiff and in favor of the defendant.

The plaintiff is not correct in its contention that the defendant has no personal interest in the $422,000.00 claimed in this motion for summary judgment. He will either retain this money or pay it to others, it being part of his fee. If he retains it, it will be because he has the right to do so; if he pays it to others he will pay it presumably because of a liability to do so. In neither event has the plaintiff the right to demand to do those things for the defendant.

Even if the defendant ultimately pays out all the $422,000.00 on commitments, he has a personal interest in seeing that it is so paid, for he thus relieves himself of a liability.

The gravamen of the complaint, taken in its entirety, is that the Commissioner, in fixing the fees, exceeded his authority and jurisdiction. But it is to be noted that that contention is not involved in the present motion for summary judgment, which does not, as a matter of fact, for the purposes of the motion, question the jurisdiction or propriety of the Commissioner's finding, but instead relies upon it, if only arguendo; and it is by virtue of the opinion and findings that the plaintiff contends that the $422,000.00 should be awarded to it at once.

■ Everything else apart, this motion for summary judgment certainly does not meet the standards of clarity and certitude as to facts and law which should exist before a summary motion is granted. The dismissal of this motion does not preclude the plaintiff from eventual recovery if it can establish a basis therefor upon trial. This cause is destined for trial in any event, if only because of the order I have made dismissing the defendant's motion for summary judgment; and the matter involved in the plaintiff's motion may be disposed of, together with any others arising, when the case is tried.

Two motions remain for consideration.

■ The defendant has filed a cross claim in which he asks damages consequent upon plaintiff's action in continuing litigation "respecting the fixing of fees in the Black Tom claim without adequate basis of legal rights and based upon demands not justified in law", on the ground that because of such action the defendant has been delayed in, and deprived of the use and enjoyment of, his share of the proceeds of the recovery, and because he has been obliged to incur heavy expenses for counsel fees and disbursements.

To this cross claim the plaintiff has filed a motion to dismiss or for a more definite statement; and the defendant has filed a motion for summary judgment on his cross claim or for a reference to compute damages.

The motion for a more definite statement is granted; the other motions are dismissed.

I am of the opinion that the cross claim, which avers damages in the amount of $100,000.00, does not, in the first place, sufficiently show what litigation the plaintiff is alleged to have "continued"; nor does it show how the claimed amount of $100,000.00 is computed or made up.

For these reasons the defendant may not be granted summary judgment upon his cross claim; and for the same reasons the

plaintiff is entitled to a more definite statement.

On the other hand, the claim upon its face does not show clearly such lack of validity as to entitle the plaintiff to summary judgment thereupon. As appears in the defendant's memorandum of law concerning the cross claim, he proceeds upon the theory that the filing of the plaintiff's complaint was motivated, not by a desire to recover monies from the defendant, but by the intent of the directors of the plaintiff company to justify themselves to the stockholders or creditors of said company, who might attack or have attacked the action of the company in making it liable for an allegedly excessive fee to the defendant herein. The true situation will doubtless be disclosed at the trial, at which time a disposition may be made upon the merits.

And Now, this 8 day of October, 1942, for the reasons stated, I make the following orders:

(1) The defendant's motion for summary judgment is denied;

(2) The plaintiff's motion for summary judgment for $421,963.51 is denied;

(3) The defendant's motion for summary judgment or for a reference to compute damages on cross claim is denied;

(4) The plaintiff's motion to dismiss the cross claim or for a more definite statement is denied insofar as it seeks a dismissal of the cross claim; it is granted insofar as it asks for a more definite statement.